IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| SUNNY W. GOLLOWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO.  3:16cv375-WKW |
| | ) | (WO) |
| THE BOARD OF TRUSTEES OF | ) | |
| AUBURN UNIVERSITY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**INTRODUCTION**

On May 24, 2016, the Plaintiff, Sunny W. Golloway ("Golloway") filed a complaint against the Board of Trustees of Auburn University, Director of Athletics Jay Jacobs ("Jacobs"), David Benedict, Chief Operating Officer of Auburn University Athletic Department ("Benedict"), Rich McGlynn, Senior Associate Athletic Director ("McGlynn"), Scott Duval, Director of Auburn's Baseball Operations ("Duval") and Jeremy Roberts, Baseball Administrator at Auburn University ("Roberts").  (Doc. # 1).  Golloway alleges claims of breach of contract, defamation, fraud, and tortious interference with his contract. He seeks injunctive relief, compensatory and punitive damages and attorney fees.

On August 18, 2016, the court ordered Golloway to file an amended complaint that sufficiently alleged diversity jurisdiction, but did not permit the plaintiff to amend the complaint for any other purpose. *See* Doc. # 30. The plaintiff filed an amended complaint on August 20, 2016.  *See* Doc. # 32.  Jurisdiction in this case is premised exclusively on

diversity. Golloway asserts that he is citizen of and domiciled in the state of Oklahoma,[1] and that defendants Jacobs, McGlynn, Duval and Roberts are domiciled and reside in Alabama. The Board of Trustees of Auburn University is a state-supported educational institution located in Auburn, Alabama, and defendant Benedict now resides in and is domiciled in Connecticut. "Citizenship is equivalent to domicile for purposes of diversity jurisdiction." *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002). *See also Simpson v. Fender*, 445 F. A'ppx 268, 270 (11th Cir. 2011). The diversity statute confers jurisdiction on the federal courts in civil actions "between citizens of different states," in which the jurisdictional amount is met. To satisfy diversity, not only must a plaintiff be a citizen of a state other than the state of which one defendant is a citizen, but also, under the rule of "complete diversity," no plaintiff may share the same state citizenship with any defendant. *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806). Because the parties are completely diverse, the court has jurisdiction of the plaintiff's claims pursuant to its diversity jurisdiction, 28 U.S.C. § 1332.

Now pending before the court is the defendants' motion to dismiss (doc. # 9 ) filed on June 17, 2016. The plaintiff has filed a response to the motion (doc. #20), and the court heard oral argument on the motion on August 18, 2016. After careful consideration of the motion to dismiss, the plaintiff's response, and the arguments of counsel, the court concludes the defendants' motion to dismiss should be granted and this case dismissed with prejudice.

---

[1] Golloway alleges that upon his termination, he returned to Oklahoma and intends to remain there.

**STANDARD OF REVIEW**

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept well-pled facts as true, but the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, the court must indulge reasonable inferences in plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.. See also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. *See Iqbal*, 556 U.S. at 679 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-62, 570 (2007) (retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard). In *Twombly*, the Supreme Court emphasized that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations and emphasis omitted). In *Iqbal*, the Supreme Court

reiterated that although Fed. R. Civ. P. 8 does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. at 678.   The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## DISCUSSION

On May 24, 2016, Golloway filed a complaint (doc. # 1) against the Board, Jacobs, Benedict, McGlynn, Duval, and Roberts, alleging that the Defendants breached his contract, defamed him, committed fraud and interfered with his employment as Head Baseball Coach for Auburn University.  On August 30, 2016, in accordance with this court's order, Golloway filed an amended complaint. *See* Doc. # 32.

Because the relevant facts are undisputed, a lengthy recitation is not necessary.[2]  In 2013, Auburn University hired Golloway as its head baseball coach.   The employment contract contained a "for cause" termination provision as well as a "without cause" provision. In the event Auburn terminated Golloway's employment "without cause," based on the terms of the written contract, Golloway would be entitled to $1,000,000.00. (Doc. # 10, Ex. B ¶ 19(b)(ii)).   According to Golloway, he was terminated without cause, and is entitled to the payout in the contract.   Remarkably Golloway did not attach the contract to his complaint. However, the defendants attached the contract to their motion to dismiss and the court will consider it.

---

[2]  Despite being 85 pages and 244 paragraphs, the complaint is long on rhetoric and hyperbole but short on clarity.  More importantly, however, it does not comply with FED.R.CIV.P. 8 which requires a short, plain statement of the claims.

In general, when the court considers matters outside the pleadings on a motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6), the motion is converted into a motion for summary judgment pursuant to FED.R.CIV.P. 56. However, the court may consider exhibits attached to the motion to dismiss in certain circumstances.

> Our Rule 12(b)(6) decisions have adopted the "incorporation by reference" doctrine, *see In re Silicon Graphics Inc. Securities Litigation,* 183 F.3d 970 (9th Cir.1999), under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. *See Harris v. Ivax Corp.,* 182 F.3d 799, 802 n. 2 (11th Cir.1999). "Undisputed" in this context means that the authenticity of the document is not challenged. *See, e.g., Beddall v. State Street Bank and Trust Co.,* 137 F.3d 12, 16–17 (1st Cir.1998); *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997); *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994).

*Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). *See also Fuller v. SunTrust Banks, Inc.*, 744 F.3d 685, 696 (11th Cir. 2014) *abrogated on other grounds Stargel v. SunTrust Bank, Inc.*, 791 F.3d 1309 (11th Cir. 2015) ("This [C]ourt recognizes an exception, however, in cases in which [1] a plaintiff refers to a document in its complaint, [2] the document is central to [her] claim, [3] its contents are not in dispute, and [4] the defendant attaches the document to its motion to dismiss."); *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n. 2 (11th Cir. 1999) ("[A] document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its content are not in dispute.")

Golloway refers to the employment contract in the complaint and the amended complaint. *See* Docs. # 1 & 32 at 8-9, ¶ 27 and 13, ¶¶ 37- 39. The employment contract is central to Golloway's claims, and Golloway does not challenge the authenticity of the

employment contract.[3]  Thus, the court considers the contents of the employment contract when considering the defendants' motion to dismiss.

**A.  Board of Trustees of Auburn University**.  Golloway names the defendant Board in three counts of his complaint as amended. In count one, Golloway asserts that the Board[4] breached his written employment contract when he was terminated without cause on September 27, 2015.[5]  In count two, Golloway asserts that the Board breached his oral contract for permanent employment when he was terminated without cause on September 27, 2015.  In count four, Golloway alleges that the defendant Board and defendant Jacobs fraudulently induced him to enter into employment with Auburn University.  The defendant Board[6] asserts that it is not a legal entity capable of being sued, and even if it could be sued,

---

[3]  The defendants also attached an email to their motion to dismiss.  *See* Doc. # 10, Ex. A.  This email is not central to Golloway's claims, and as stated during oral argument, the court has not considered this email in reaching its decision.

[4]  Although Golloway asserts that he entered into a contract with Auburn University (docs. # 1 & 32 at ¶ 37 at 12), he has sued only the Board of Trustees of Auburn University.

[5]  In his complaint, Golloway responds in detail to the University's accusations against him.  The court need not recite in detail the allegations that led to Golloway's termination. Suffice it to say, he was fired.

[6]  The plaintiff names only the Board of Trustees of Auburn University as a defendant. He has not named the individual board members.  At oral argument on the motion to dismiss, the plaintiff intimated that he should be allowed to amend the complaint to name the individual board members as defendants.  The court is cognizant that under FED.R.CIV.P. 15(a)(2), a "court should freely give leave to amend when justice so requires."  While leave to amend should be "freely given when justice so requires," the court can deny amendments when (1) the amendment would be prejudicial to the opposing party; (2) there has been undue delay or bad faith on the part of the moving party; or (3) the amendment would be futile.  *See*  FED. R. CIV. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  *See also Jameson v. Arrow Co.,* 75 F.3d 1528, 1534 (11th Cir. 1996). Because the individual board members would also be entitled to sovereign immunity, the court concludes any amendment at this juncture would be futile.  *Foman*, 371 U.S. at 182 (holding that "the grant or denial of an opportunity to amend is within the discretion of the District Court," and that leave to amend need not be given when the amendment would be futile).

it argues that it is entitled to sovereign immunity under the Eleventh Amendment.

Both the Alabama Supreme Court and the Eleventh Circuit have consistently held that state universities in Alabama are considered an agency or instrumentality of the state. *See Harden v. Adams*, 760 F. 2d 1158, 1163 (11th Cir.1985); *Rigby v. Auburn Univ.*, 448 So. 2d 345, 347 (Ala. 1984); *Eubank v. Leslie*, 210 F. App'x 837, 844 (11th Cir. 2006). Consequently, the Board of Trustees is an instrumentality of the state for the purposes of sovereign immunity under both the Eleventh Amendment and the Alabama Constitution, Article 1, § 14. *See Harden, supra*; *Eubank, supra*; *Ala. State Univ. v. Danley*, — So. 3d —, 2016 WL 1394830, * 5 (Ala. 2016); *Gulf State Park Auth. v. Gulf Beach Hotel, Inc.*, 22 So. 3d 432, 435 (Ala. 2009); *Rigby, supra*. As an instrumentality of the state, the Board is entitled to sovereign immunity with respect to Golloway's breach of contract claims and fraud claim against it.

In the alternative, Golloway argues that because he is seeking injunctive relief and requiring the Board to simply perform a ministerial function of paying him what he is owed for work he has already performed, the Board is not immune. While there is a well-recognized exception to Eleventh Amendment immunity for suits by individuals seeking declaratory or prospective injunctive relief, *see Ex parte Young*, 209 U.S. 123, 156-60 (1908), this exception does not apply because Golloway is seeking damages for breach of contract; he is not seeking prospective injunctive relief. His argument that he is seeking to require the defendants to perform a ministerial duty of paying him $1,000,000.00 is firmly foreclosed by *Danley, supra.* In *Danley*, the Alabama Supreme Court held that "Danley's

state-law claims seeking *damages* against those ASU officials named in their official capacities are absolutely barred by § 14." — So. 3d at —, 2016 WL 1394830 at *7.  The Court distinguished those cases wherein state employees were seeking payment of salaries "already earned" from Danley's position.  "Danley, on the other hand, seeks that portion of his salary he had yet to earn but that, he says, he was entitled to receive because of ASU's allegedly wrongful termination of his employment." *Id*.  Golloway's claim is not for money he has already earned.  Consequently, for the reasons as stated, the court concludes that the Board is due to dismissed as a defendant in this action, and counts one and two of the complaint as amended are due to be dismissed.

**B.  Defamation**.  In count three of the complaint, Golloway alleges a defamation claim based on a written statement made by Jacobs in announcing Golloway's termination for cause.  Golloway asserts that when Jacobs announced Golloway's termination for cause, Jacobs made false and defamatory statements in a written sttement which Golloway set out in his complaint:

> I regret to announce that earlier today I dismissed Auburn head baseball coach Sunny Golloway with cause.

> Jacobs added:

> My commitment will always be to provide the best student- athlete experience in the nation, and we will not accept anything less.

> 224.   In doing so, Jacobs defamed Golloway. Coach Golloway did nothing which could constitute "cause" for purposes of his written contract. Nor did Golloway do anything, or fail to do anything, which would constitute less than the best student- athlete experience in the nation. Jacobs' statement that he would not accept anything less than the best student-athlete experience in the

nation is untrue. He is accepting it now with a Head Coach who, as an assistant, witnessed a player being assaulted by a coach and neither did anything to stop it, nor did he report it. He regularly and abusively uses profanity in belittling and berating his players. He uses gay slurs in attempting to motivate them, and, before the end of the season, demoralized and undermined most of his freshmen players by cruelly telling them he wasn't going to renew their scholarships. Thompson is unfit to coach, not because of his 23-33 record this season, with a top ten recruiting class, but because of his outrageous treatment of his players, yet Jacobs readily accepts it.

(Doc. # 32 at 77-78, ¶¶ 223-224).

Golloway argues that Jacobs' statement about his commitment to student-athletes is false because Jacobs hired a coach who, according to Golloway, is not providing "the best student-athlete experience in the nation," and Jacobs is accepting bad behavior from Auburn's present baseball coach. (Doc. # 1 & 32 at ¶ 224). Golloway contends that these statements were false, misleading and designed to disparage him "reflect poorly on him, cast him in a false light, and justify his dismissal as Head Baseball Coach." (Doc. # 1 & 32 at ¶ 225).

To establish an actionable defamation claim, Golloway must allege

1) a false *and* defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting to at least negligence; and 4) either actionability or the statement irrespective of special harm or the existence of special harm caused by the publication of the statement.

*Drill Parts and Serv. Co., v. Joy Mfg., Co.*, 619 So. 2d 1280, 1289 (Ala. 1993) quoting *McCaig v. Talladega Publishing Co*., 544 So. 2d 875, 877 (Ala. 1989). *See also Ex parte Bole*, 103 So. 3d 40, 51-53 (Ala. 2012); *Ponder v. Lake Forest Prop. Owners Ass'n*,— So. 3d —, —, 2015 WL 3935490, *9-10 (Ala. Civ. App. June 26, 2015) (No. 2130790).

To determine whether Golloway has stated an actionable defamation claim against Jacobs, the court considers whether an ordinary person or a person of average intelligent would "ascribe a defamatory meaning to the language." *Drill Parts and Serv. Co*., 619 So. 2d at 1289. "The question of "[w]hether the communication is reasonably capable of a defamatory meaning is a question, in the first instance, for the court." *Id*., at 1289-90. *See also Cottrell v. Nat'l Collegiate Athletic Ass'n*, 975 So. 2d 306, 346 (Ala. 2007); *Butler v. Town of Argo*, 871 So. 2d 1, 19 (Ala. 2003); *Clark v. Am.'s First Credit Union*, 585 So. 2d 1367, 1370 (Ala. 1991). It is on this first question that Golloway's claim fails.

Golloway first states that he did nothing to constitute "cause" for his termination. The court concludes that with respect to a University sports coach the statement is not defamatory. A statement is defamatory if it "tends . . . to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Blevins v. W.F. Barnes Corp.*, 768 So. 2d 386, 389-90 (Ala. Civ. App. 1999). Coaches are fired all the time and to say a coach is fired for undisclosed "cause" would not be understood by a reasonable person as defamatory.

The next question for the court is whether an ordinary person, or a person of average intelligence would ascribe a false *and* defamatory meaning about Golloway to Jacobs' statement about student-athlete experiences at Auburn. *See Drill Parts and Serv., Co., Inc*., 619 So. 2d at 1289-90. Jacobs' statement about his commitment expresses only his desire for a quality athletic program. In his complaint, Golloway claims that the statement is not true because his replacement does not meet those criteria. Even if Golloway is correct in his

assessment of the verity of Jacobs' statement, the statement does not defame Golloway because it is not about him.[7]  Jacobs' motion to dismiss the defamation claim against him is due to be granted.

**C.  Fraud Claim**.  In count four of the complaint as amended, Golloway asserts a claim of fraud against the Board and Jacobs, alleging that Jacobs orally promised him a permanent contract as well a new hitting facility and practice field.[8]  He further asserts that Jacobs promised him sideline passes to Auburn football games, parking passes and "two all-access passes on football game day to anywhere in the stadium."  (Docs. # 1 & 32 at 79-80, ¶ 231).  Count four of the complaint alleges the following facts.

> 229.    When Plaintiff was negotiating with Jay Jacobs to be hired by Auburn University as its Head Baseball Coach, when Jacobs got to the topic of money, he said, "Let's make it 650 " (meaning $650,000). Coach Golloway asked, "For how many years?"  Jacobs replied, "You tell me, partner."  Golloway replied, "At least five years."  Jacobs then replied, "We can do that.  Make it as many as you want."  Jacobs also promised Golloway that he would have a new hitting facility and a new practice field.  Plans were drawn up, but no action as taken to construct either.  As further inducement to attract Golloway to Auburn, Jacobs promised him two sideline passes to Auburn football games; two parking passes in a prime lot next to the stadium; and two all-access passes on football game day to anywhere in the stadium, including the locker room. He didn't tell Golloway that after two years, the perks would change

---

[7]  In his brief in opposition to the defendants' motion to dismiss Golloway does not argue otherwise. Other than arguing for an opportunity to conduct discovery, Golloway's entire response (doc. # 20 at 18) regarding the defamation claim focuses only on the "for cause" aspect of Jacobs' statement:

> [T]he facts in Plaintiff's Complaint support the fact that the stated reason is untrue. There was no reasonable cause to fire Plaintiff from his job. Moreover, the publisher went further than he needed to in order to maliciously and in bad faith slander Plaintiff, knowing that the allegations published in the press release were false.

[8]  The Board is immune from Golloway's fraud claim for the same reasons it is immune from his breach of contract claims.

significantly.

(Docs. # 1 & 32 at 80-81, ¶ 229).

According to Golloway, these misrepresentations constitute actionable fraud.  Jacobs, on the other hand, asserts that Golloway's fraud claim is barred by his written contract.[9]  In

---

[9]  Golloway attempts to assert that Jacobs' representations created an oral permanent contract.  The defendants argue that Golloway has failed to state a claim for relief because this claim is barred by the merger clause in his written contract.

> As a general rule, "when parties reduce a contract to writing and intend that writing to be the complete contract, no extrinsic evidence of prior or contemporaneous agreements will be admissible to change, alter, or contradict the contractual writing." *Sherman v. Woerner Magnolia Farms, Inc.*, 565 So.2d 601, 605 (Ala.1990). This is so, because, "all prior and contemporaneous negotiations are [deemed to be] merged" into that writing. *Crimson Indus., Inc. v. Kirkland*, 736 So.2d 597, 601 (Ala.1999) (emphasis in original).
>
> "When a contract contains ... a merger clause, the agreement is deemed to be 'integrated,' such that evidence of prior or contemporaneous agreements shall not be admitted to contradict the terms of the agreement." *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1309 (11th Cir. 1998).  . . . Whether a contract is integrated is ordinarily a question of law for the court to decide. *Moore v. Pennsylvania Castle Energy Corp.*, 89 F.3d 791, 797 (11th Cir.1996); *Associated Catalog Merchandisers, Inc. v. Chagnon*, 210 Conn. 734, 740, 557 A.2d 525, 528 (1989); *Walker v. Saricks*, 360 Pa. 594, 599, 63 A.2d 9, 11 (1949); *see also Hibbett Sporting Goods v. Biernbaum*, 375 So.2d 431, 435 (Ala.1979).

*Ex parte Palm Harbor Homes, Inc.*, 798 So. 2d 656, 660-61 (Ala. 2001).

The employment contract at issue contains the following provision.

> 25.   UNDERLINE ENTIRE AGREEMENT:  This instrument contains the entire agreement of the parties, is understood to modify and replace any prior agreement with respect to the subject matter hereof and there are no collateral oral or written Agreements or understanding between the parties.  Coach acknowledges and agrees that he or she had not relied on any representation of Auburn or its representatives in entering the contract and that he or she had the opportunity to consult with legal counsel of their choice before executing this Agreement.

Doc. # 10, Ex. B at 20, ¶ 25.

"The merger rule applies as well to prior or contemporaneous writings as to oral agreements." *Belmont Homes, Inc. v. Law*, 841 So. 2d 237, 240 (Ala. 2002).  It is undisputed that Golloway signed the contract containing the merger clause.  There is no allegation that Golloway cannot read, he was prevented

addition, Jacobs argues that Golloway has asserted a promissory fraud claim, and he cannot demonstrate he reasonably relied on the representations or that Jacobs had the present intent to deceive him at the time of the representations.  While Golloway's complaint is not a model of clarity, in his fraud claim Golloway alleges that he would not have accepted Auburn's offer of employment had the representations regarding length of contract, benefits and perks had not been made by Jacobs.  (Docs. # 1 & 31, at 80, ¶ 231).  Golloway repeatedly asserts the representations were made to induce him to accept the offer of employment and relocate to Auburn.  (*Id.,* at 81, ¶¶233, 234, & 235). The court concludes that, properly construed, Golloway's claim is one of fraud in the inducement.

Jacobs is correct that the merger clause bars any breach of contract claim,[10] but Golloway is also correct that under Alabama law, the merger clause in the contract does not preclude him from pursuing a fraud in the inducement claim regarding the formation of the contract. *See Downs v. Wallace*, 622 So. 2d 337, 341 (Ala. 1993) ("this Court has never held that an integration clause such as the one contained in the Downses' purchase agreement

_____

from reading the contract, or he could not have understood the merger clause had he read it.  "[W]hen a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract, . . . . and will be bound thereby." *First Family Fin. Servs., Inc. v. Rogers*, 736 So. 2d 553, 558 (Ala. 1999).  *See also Harold Allen's Mobile Home Factory Outlet, Inc. v. Early*, 776 So. 2d 777, 784 (Ala. 2000).  Alabama law is clear that the merger clause bars a breach of contract claim.  Consequently, the merger agreement bars any claim that Golloway has a permanent contract based on oral representations made by Jacobs during the negotiations of his written contract. Golloway conceded as much at oral argument.

[10]  Alabama law is clear that "[m]erger clauses are enforceable under state contract law . . . [but] merger clauses do not bar parol evidence of fraud in the inducement of contracts . . ." *See Feil v. Wittern Gr., Inc.*, 784 So. 2d 302, 309 (Ala. Civ. App. 2000); *Ex parte Palm Harbor Homes, Inc.*, 798 So. 2d 656, 660-661 (Ala. 2001); *Wood v. Phillips*, 849 So. 2d 951, 959 (Ala. 2002) (When fraud in the inducement has been ruled out,  . . .  it is clear that under Alabama law all prior statements and negotiations are merged into the written contract . . .").

renders a party's reliance on oral representations unjustifiable, or unreasonable"); *Kidder v. AmSouth Bank, N.A.*, 639 So. 2d 1361, 1363 (Ala. 1994) ("We hold that Kidder may maintain an action alleging fraud in the inducement of her employment based upon alleged misrepresentations as to her working conditions.").  "[A]lthough a written contract stipulates that there were no oral understandings not incorporated therein, such a stipulation does not foreclose a party, as a matter of law, from establishing his reliance on fraudulent representations that induced him to enter the contract."  *Downs*, 622 So.2d at 341

Even though Golloway's fraud in the inducement claim is not precluded by the merger clause, his fraud claim still fails because, in light of the written contract, he cannot demonstrate that he reasonably relied on any of Jacobs' alleged representations.

> Fraud in the inducement consists of one party's misrepresenting a material fact concerning the subject matter of the underlying transaction and the other party's relying on the misrepresentation to his . . . detriment in executing a document or taking a course of action.

*Farmers Ins. Exchange v. Morris*, — So. 3d —, 2016 WL 661671, *5 (Ala. Feb. 12, 2016) (No. 1121091) quoting *Oakwood Mobile Homes, Inc. v. Barger*, 773 So. 2d 454, 459 (Ala. 2000).

To sustain a claim of fraud in the inducement, Golloway must allege that material misrepresentations were made and that he relied on the misrepresentations to his detriment. And, most importantly, the reliance must be reasonable.

> This Court has stated that 'fraudulent-inducement claim[s] are governed by the "reasonable-reliance" standard.  Under that standard, a person cannot blindly rely on an agent's oral representations to the exclusion of written disclosures in a contract.'  *Harold Allen's Mobile Home Factory Outlet, Inc. v. Early*, 776

So. 2d 777, 778, 783-84 (Ala. 2000) (citations omitted).

*Farmers Ins. Exchange*, — So. 3d at —, 2016 WL 661671 at * 5.

> [A] return to the "reasonable reliance" standard will once again provide a
> mechanism, . . . whereby the trial court can enter a judgment as a matter of law
> in a fraud case where the undisputed evidence indicates that the party or parties
> claiming fraud in a particular transaction were fully capable of reading and
> understanding their documents, but nonetheless made a deliberate decision to
> ignore written contract terms.

*Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 421 (Ala. 1997). *See also Farmers Ins. Exch.*,

— So. 3d at —, 2016 WL 661671 at *10.

The court concludes that, as a matter of law, Golloway's reliance on any

representations of Jacobs, was not reasonable in light of the terms of the written contract.

The terms of  Golloway's employment contract specifically provided for employment for

a period of five (5) years.  (Doc. # 10, Ex. B at 1, ¶ 2).  Golloway's assertion that he relied

on Jacobs' statement that the contract could be for "as long as he liked" was not reasonable

based on the written contract.  "[W]here an alleged misrepresentation is explicitly *addressed*

*and negated in a written agreement signed by the parties,* any reliance on a contrary oral

assertion may be deemed unreasonable as a matter of law." *Farmers Ins. Exchange*, — So.

3d —, 2016 WL 661671 at *10.  *See also Ladas Land & Devel., Inc. v. Merritt and Walding,*

*Props.*, 978 So. 2d 55, 59 (Ala. Civ. App. 2007) (the court held that, by accepting a written

contract whose terms differed from oral representations, the plaintiff had implicitly consented

to the merger clause and accepted the terms of the written contract.)

Golloway's written contract also provides a section for "additional benefits" in which

15

Golloway received "four (4) season tickets for Auburn football and men's basketball during the term of this Agreement." (Doc.# 10, Ex. B at 20, ¶ 24). Golloway's assertion that he relied on promises of sideline passes, parking passes and all access passes is unreasonable as a matter of law in light of the explicit terms of the written contract. (Doc. # 32 at 21-22, ¶ 60-61). Because the written terms of the contract explicitly address the length of his employment and additional benefits, Golloway cannot demonstrate that his reliance on Jacobs' oral representations was reasonable. Moreover, even though Golloway complains that he was fraudulently induced to enter into employment with Auburn by promises of a new hitting facility and practice field, he has not asserted that these representations were material or even a misrepresentation. Consequently, the court concludes that the motion to dismiss count four, the fraud claim, is due to be granted.

**D.    Tortious Interference claim.** Finally, in count five, Golloway alleges that defendants Benedict, McGlynn, Duval and Roberts intentionally interfered with his written contract with Auburn. (Doc. # 1 & 32 at 82, ¶ 238).

To establish a *prima facie* case of this tort Golloway must allege the following:

(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage.

*White Sands Grp., L.L.C. v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009)

The defendants argue that Golloway cannot establish a *prima facie* case because they are not strangers to the contract, and, thus, they cannot be liable for tortious interference with a business relationship.

16

'After proving the existence of a contract, it is essential to a claim of tortious interference with contractual relations that the plaintiff establish that the defendant is a "third party," i.e., a "stranger" to the contract with which the defendant allegedly interfered.' *Atlanta Market Ctr. Management Co. v. McLane*, 269 Ga. 604, 608, 503 S.E.2d 278, 282 (1998); *see also Alcazar Amusement Co. v. Mudd & Colley Amusement Co.*, 204 Ala. 509, 86 So. 209 (1920). This is so, because 'a party to a contract cannot, as a matter of law, be liable for tortious interference with the contract.' *Lolley v. Howell*, 504 So.2d 253, 255 (Ala.1987).

"'One is not a stranger to the contract just because one is not a party to the contract....' *McLane*, 269 Ga. at 608, 503 S.E.2d at 282 (emphasis added [in *BellSouth Mobility* ]).

*Parsons v. Aaron*, 849 So. 2d 932 (Ala. 2002).

It is undisputed that defendants Benedict, McGlynn, Duval and Roberts were all employed at Auburn University in the Athletic Department. *See* Docs. # 1 & 32 at 5, ¶¶ 12-15. Duval and Roberts were employed specifically with the baseball program in which Golloway was employed as head baseball coach. The actions about which Golloway complains concern the manner in which Golloway operated as the head baseball coach. Although these defendants are not named parties to Golloway's employment contract, they are certainly participants to the relationship as the defendants and Golloway all worked together in and under the Auburn Athletic Department.

For the sake of clarity, we adopt the term 'participant' to describe an individual or entity who is not a party, but who is essential, to the allegedly injured relationship and who cannot be described as a stranger. One cannot be guilty of interference with a contract even if one is not a party to the contract so long as one is a participant in a business relationship arising from interwoven contractual arrangements that include the contract. In such an instance, the participant is not a stranger to the business relationship and the interwoven contractual arrangements define the participant's rights and duties with respect to the other individuals or entities in the relationship. If a

17

participant has a legitimate economic interest in and a legitimate relationship
to the contract, then the participant enjoys a privilege of becoming involved
without being accused of interfering with the contract."

*Walter Energy, Inc. v. Audley Capital Advisors LLP*, 176 So. 3d 821 (Ala. 2015) quoting

*Waddell & Reed, Inc. v. United Investors Life Ins. Co*., 875 So. 2d 1143, 1157 (Ala. 2003).

Moreover, the burden is on Golloway to establish that these defendants were "third

parties" or "strangers" to the relationship.  *See Waddell & Reed*, 875 So. 2d at 1154.  *See also*

*Allied Co. of Wiregrass, Inc. v. City of Dothan*, 191 So. 3d 804, 811 (Ala. Civ. App. 2015).

This he has failed to do.

Relying on *Hickman v. Winston Cnty Hosp. Bd.*, 508 So. 2d 237, 237 (Ala. 1987),

Golloway asserts that "[c]orporate officers or employees may individually commit the tort

of intentional interference with business or contractual relations to which their corporation

or employer is a party." (Doc. # 20 at 20).  While this is generally true, Golloway must

establish that the employees acted outside the scope of their authority.  *Hickman*, 508 So. 2d

at 239-240.  Golloway's complaint fails to allege any facts showing that the defendants were

acting outside their authority as employees of the Auburn Athletic Department.  Accordingly,

the court concludes that the defendants' motion to dismiss the tortious interference claim is

due to be granted.

## IV.  CONCLUSION

Accordingly, for the reasons as stated, it is the RECOMMENDATION of the

Magistrate Judge that the defendants's motion to dismiss (doc. # 9) be GRANTED and that

this case be DISMISSED with prejudice.

18

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **April 4, 2017**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 21th day of March, 2017.

　　　　　　　　　　/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE